IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-cr-40063 |
| ) | |
| SETH AARON COX, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Cox's Motion for Compassionate Release (Doc. 170), his attorney's Supplemental Motion (Doc. 173), and the Government's Response (Doc. 174). For the reasons set forth below, Defendant's Motion is DENIED.

### BACKGROUND

On April 13, 2007, this Court sentenced Defendant to a 300-month term of imprisonment which was later reduced to 262 months pursuant to an agreed motion under 18 U.S.C. § 3582 based on an amendment lowering the applicable drug sentencing guidelines. Defendant is currently serving his sentence at FCI Greenville in Illinois and his projected release date is February 28, 2025.

The presentence investigation report indicates that from early 2004 to around March of 2004, Defendant was part of a conspiracy with several others to manufacture methamphetamine. Defendant directed others to purchase pseudoephedrine pills for co-conspirator, Audie Weir, to cook into methamphetamine. (Doc. 73 at 9–10). Defendant also provided additional ingredients for the cooks and installed a video system at Weir's cooking location to enable the conspirators to

1

conduct countersurveillance. (*Id*. at 9). Defendant received the finished methamphetamines which he sold to others and kept for personal use.

The state police eventually searched Weir's residence and discovered the methamphetamine lab in Weir's detached garage. The state later brought charges against Defendant for his involvement in the conspiracy to manufacture methamphetamine. (Doc. 70 at 7–8). Defendant posted bond and was released. (*Id*.). Weir and others began rebuilding the methamphetamine laboratory in Weir's garage even as some of them were on bond for manufacturing methamphetamine. (*Id*. at 8). Defendant was later arrested for a felony driving offense and the state police again searched Weir's home and discovered methamphetamine manufacturing materials. (*Id*.)

Defendant did not plead guilty and proceeded to trial. He was found guilty of one count of conspiracy to manufacture methamphetamine. He appealed his conviction and sentence which the Seventh Circuit denied. *United States v. Cox*, 536 F.3d 723 (7th Cir. 2008). Defendant also filed a motion under 28 U.S.C. 2255 seeking to collaterally attack his conviction, which this Court also denied. *See* Case No. 09-CV-4055, (Doc. 7).

On November 25, 2020, Defendant filed a *pro se* Motion for Compassionate Release. (Doc. 170). The Court appointed the Federal Public Defender's Office to represent him, and on December 14, 2020, appointed counsel filed a Supplemental Motion. (Doc. 173). On December 18, 2020, the Government filed its Response in opposition to compassionate release. (Doc. 174). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court

may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. "Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. The Seventh Circuit explained that the guidelines provide a "working definition of 'extraordinary and compelling reasons'" and cautioned that a judge who "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*. at 1180. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(A)(ii)(I). A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. *Id*.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy

4

the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

Defendant urges the Court to find extraordinary and compelling reasons exist for his compassionate release based upon the risks he faces due to the coronavirus and the steps that he has taken to rehabilitate himself. The Government argues that Defendant failed to exhaust his administrative remedies and is otherwise not eligible for compassionate release.

### A. Exhaustion Requirement

The Government argues that Defendant failed to exhaust his administrative remedies as set forth in 18 U.S.C. § 3582(c)(1)(A), requiring that the Court dismiss this case. The Government states that Defendant filed his request with the BOP on October 30, 2020 and filed his motion with the Court in November 25, 2020, four days before the required 30-day deadline for the BOP to respond to his request. The Government acknowledges that Counsel filed the Supplemental Motion for Compassionate Release on December 14, 2020, well passed the thirty-day deadline. However, the Government suggests that since Counsel filed a Supplemental Motion as opposed to an Amended Motion, the Court should look to the date Defendant filed the *pro se* motion to determine whether Defendant met the exhaustion requirement. Defendant's Counsel agrees that Defendant

filed his request with the Warden on October 30, 2020 but in the Supplemental Motion, argues that more than thirty days had passed since Defendant filed his request with the Warden.

Since COVID-19 has wreaked havoc on this country, many federal judges, including those in the Central District of Illinois, have considered whether the exhaustion requirements can be waived. Some judges have found that they have the discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19. *See e.g. United States v. Anderson,* 2020 WL 2521513 (C.D. Ill. May 18, 2020); *United States v. Scparta,* 2020 WL 1910481 (S.D.N.Y. Apr. 19, 2020); *United States v. Guzman Soto,* 2020 WL 1905323 (D. Mass. Apr. 17, 2020); *United States v. Russo,* 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); *United States v. Smith,* 454 F. Supp. 3d 310 (S.D.N.Y. Apr. 13, 2020); *United States v. Haney,* 454 F. Supp. 3d 316 (S.D.N.Y. Apr. 13, 2020); *United States v. McCarthy,* 2020 WL 1698732 (D. Conn. Apr. 8, 2020). Other judges have held that the 30-day requirement is mandatory, not subject to exception. *See e.g. United States v. Cox,* 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); *United States v. Demaria,* 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); *United States v. Rensing,* 2020 WL 1847782 at *1 (S.D.N.Y. Apr. 13, 2020); *United States v. Roberts,* 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020).

The Seventh Circuit has not yet directly addressed the division, but the Central District of Illinois has previously interpreted Section 3582(c)(1)(A) to not require an inmate to fully exhaust BOP procedures before coming to court, in some circumstances, stating:

> While a court may certainly decline to consider a motion where Defendant has not waited thirty days, nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release.

*Anderson,* 2020 WL 2521513 at *4.

While Defendant's initial motion may not have been timely filed under § 3582(c)(1)(A), by the time Defendant's Counsel filed the Supplemental Motion, thirty days had passed since Defendant e-mailed the Warden requesting compassionate release, and the Government represents the Warden has denied the request. The Government did not respond to the motion until after Counsel filed the Supplemental Motion and the Government was in no way prejudiced by *the pro se* Defendant filing a motion a few days early. Further, for the Court to decline to hear the Motion today, only for Defendant to re-file it tomorrow, at which point it would be timely and properly exhausted, would be a waste of judicial resources. Therefore, the Court addresses Defendant eligibility for compassionate release.

### B. Eligibility for compassionate release related to Defendant's health.

Defendant cites a number of health problems in support of his motion, including hypertension, arthropathy, hyperglycemia, and being pre-diabetic. The Government points out that only Defendant's hypertension is something that the CDC has flagged as an underlying condition that "might" increase Defendant's risk for contracting a severe infection of COVID-19. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed January 13, 2021). The Government observes that Defendant is relatively young at 39-years old, his BOP records indicate that he is relatively healthy, is receiving appropriate medical treatment, and that his medical conditions appear to be well-controlled. *See generally* (Doc. 176-2). The Government further observes that Defendant has had no medical restrictions on his employment and is considered "healthy or simple chronic care" inmate. (Doc. 174-6 at 2).

As previously stated, "[t]he mere presence of COVID-19 in a particular prison cannot justify compassionate release – if it could, every inmate in that prison could obtain release." *See*

*e.g., United States v. Melgarejo*, 2020 WL 2395982 (C.D. Ill. May 12, 2020). At the time the government drafted its motion in December, FCI Greenville had 27 known COVID-19 cases among inmates and 15 cases among staff. As of January 13, 2021, FCI Greenville has 14 confirmed cases among inmates and 15 cases among staff members. https://www.bop.gov/coronavirus/ (Last accessed January 13, 2021). The Government further outlined the procedures BOP has implemented to limit the spread of the disease. The number of COVID-19 cases has gone down in the last month and is less widespread than at other facilities. Accordingly, the Court finds Defendant has failed to meet his burden of establishing extraordinary and compelling circumstances justifying his release.

### C. The Court is unable to conclude that Defendant would not be a danger to his community.

Moreover, Defendant has not demonstrated that he would not be a danger to his community. Before releasing a defendant, the Court gives great weight to whether a defendant is a danger to the community. *See* U.S.S.G § 1B1.13.The facts of offense were serious. Defendant engaged in a long-term conspiracy to manufacture and distribute methamphetamine. In addition to the harm caused by the drugs themselves, the manufacturing activity posed a significant risk of harm to the environment and the community. Even after Defendant and Weir, the co-conspirator who manufacture the methamphetamine were arrested, they both posted bond and began working together to cook meth again.

The Government further observes that Defendant took part in the conspiracy while he was under some form of court supervision in two other cases. (Doc. 73). Defendant has not been trustworthy in the past while under Court supervision and as the Government notes, Probation's ability to closely supervise Defendant are presently limited. Given that Defendant is in relatively good health, the seriousness of his crimes, and the fact that he has been untrustworthy on

supervised release, the Court is persuaded that Defendant is not a suitable candidate for compassionate release.

## CONCLUSION

For the reasons set forth above, it is ORDERED that Defendant's Motion [170] and Supplemental Motion [173] are DENIED.

ENTERED this 14th day of January, 2021.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
